The Honorable Jimmie Don McKissack State Representative 3418 Highway 65 South Pine Bluff, Arkansas 71601
Dear Representative McKissack:
This is in response to your request for an opinion concerning the issuance of an "executive order" by the mayor of the City of Pine Bluff. You note that Pine Bluff is a city of the first class with a mayor-council form of government. The executive order at issue, issued on November 3, 1994, reads in pertinent part as follows:
 Audits of all City of Pine Bluff funds and accounts, be they general or special, shall not be performed by the same firm for more than three (3) consecutive years.
The order is signed by Mayor Jerry Taylor. Specifically, you inquire as to whether a mayor has the authority to issue an "executive order" and, if so, whether the above order falls within the scope of such authority. It is my opinion that although a mayor may be within his or her right to issue executive orders in some instances, under the facts presented, the above order was invalid.
There are no statutes or caselaw specifically addressing a mayor's authority to issue executive orders. The executive department of government "is charged with the detail of carrying the laws into effect and securing their due observance." Black's Law Dictionary (6th ed. 1990). An "Executive order" is issued "for the purpose of interpreting, implementing, or giving administrative effect to a provision . . . of some law. . . ." Id. Arkansas Code Annotated § 14-43-504 (1987 Cum. Supp. 1993) defines the general powers and duties of a mayor in the city of the first class. Presumably, a mayor could issue executive orders setting forth and implementing decisions by the city council or pertaining to matters delegated to the mayor under § 14-43-504 or other statutory authority.
The subject at issue here, the city's annual audit, is contained in Title 14, Chapter 58 of the Arkansas Code Annotated, which governs the fiscal affairs of cities and towns. Under § 14-58-303(a), the mayor of a city of the first class has the following authority:
 . . . [T]he mayor . . . shall have exclusive power and responsibility . . . to make all necessary contracts for work or labor to be done . . . or other necessary things to be furnished for the benefit of the city, or in carrying out any work or undertaking of a public nature therein.
At first glance, this statute would appear to give the mayor exclusive control over any and all contracts for city work, including auditing services. Reference must be made, however, to several other statutes in this chapter which specifically concern municipal audits. Arkansas Code Annotated § 14-58-101(a)(1) provides:
 The audit of every municipal corporation shall be made by the Division of Legislative Audit or other independent persons licensed to practice accounting by the Arkansas State Board of Public Accountancy, to be selected by the governing body of the municipality.
While it could be argued this statute only requires the governing body (here, the city council) to make a choice between having the audit performed by the state or by a private accountant, it is my opinion that the legislature intended the governing body to also decide which particular private accountant should be retained. The first rule in construing the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common usage. Bolden v. Watt, 290 Ark. 343, 719 S.W.2d 428 (1986). In addition, and with reference to § 14-58-303(a), a general law does not apply where there is another statute governing the particular subject. Williams v.Pulaski County Election Comm'n., 249 Ark. 309, 459 S.W.2d 52 (1970). Other evidence of legislative intent can be found in §§ 14-58-307 and14-58-901(a)(1), which again refer to the responsibility of the municipal governing body to have the financial affairs of the city audited.
Notwithstanding the above interpretation, and assuming, arguendo, that §14-58-303 applies, that statute must be read in conjunction with the relevant city ordinance in effect at the time the order was issued. Although § 14-58-303(a) appears to grant the mayor exclusive authority to negotiate contracts, subsection (b)(2) requires the mayor or his representative to invite competitive bidding for all contracts in excess of $5,000. This provision has been interpreted to include professional services. See Klinger v. City of Fayetteville, 293 Ark. 128,732 S.W.2d 859 (1987). However, a governing body, by ordinance, may waive the requirements of competitive bidding where such bidding is deemed not feasible or practical. § 14-58-303(b)(2)(B). Ordinance 5211, enacted August 17, 1987, amended the city's code of ordinances to include Section 2-83, providing for the competitive selection of professional services. This process was to be conducted by a review committee and was based on negotiated contracts rather than formal bidding. The ordinance vested the review committee, not the mayor or his representative, with the authority to "establish the qualifications and evaluation, (sic) criteria necessary for the specific services to be provided."[1] Therefore, in light of the city's governing ordinance in effect at the time the executive order was issued, the mayor's actions were, in my opinion, invalid.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Sarah L. James.
Sincerely,
WINSTON BRYANT Attorney General
WB:SLJ/cyh
[1] Whether this ordinance operated to waive the bidding requirements under the statute is unclear and, at any rate, is not before us.